Gary G. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

Counsel for Defendant Jayson Knox

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>  vs.<br><br>JAYSON KNOX,<br><br>                Defendant. | Case No. 4:20-cr-00005-RRB-SAO<br><br>**DEFENDANT'S SENTENCE MEMORANDUM** |

## I. SENTENCING RECOMMENDATION

Probation has disclosed the Final PSR in this matter, Dk. 69, and recommends the Court impose a sentence of 120 months in custody. Jayson Knox agrees with this custody term recommendation for all the reasons noted by the Probation officer as well as the substantial additional matters presented here and elsewhere by the defense. To the extent necessary, the sentence should be derived at by rejection of the properly calculated guideline range, application of downward variances from those guidelines based on the information before the Court. **Mr. Knox requests a sentence of ten years custody, followed by five years of supervised release, no fine, and a $100 assessment but waiver of the additional JTVA assessment.**

## II. THE GUIDELINES

"All sentencing proceedings are to begin by determining the applicable Guidelines range. The range must be calculated correctly." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008). Improperly calculating the Guidelines range constitutes "significant procedural error." *Id*. See also, *Gall v. United States*, 552 U.S. 38, 49-51 (2007). Here, Mr. Knox DOES NOT agree with Probation's calculation of the Guidelines. See, Dk. 69 ("PSR").

### 1. Offense Level – Count of Conviction

The Defendant's single offense of conviction is a violation of 18 U.S.C. §2422(b). His Guidelines calculation should be calculated under U.S.S.G. § 2G1.3(a)(3), thus the Base Offense Level is 28. His conduct consisted solely of texting or messaging the victims by phone, communicating as nearly all young people in his village do, but technically because the phone is considered "a computer," a two-level enhancement applies. Subtracting three levels for his acceptance of responsibility results in a final offense level of 29. The guidelines calculation should end there.

Defendant objects to the further Guidelines calculations done by probation as noted in the addendum to the PSR. Defendant further objects to the even more enhanced calculations raised by the government in its sentencing memorandum. The tortured and convoluted manner in which probation and the government extrapolates the Guidelines to create a 360 to life or even life recommended range for this uncomplicated, phone generated offense illustrates the inappropriateness of the stretching of the Guidelines to their upper limits of application through cross-reference provisions and reliance on Chapter One discretionary considerations. The Court should apply the guideline found at

§2G1.3(a) and stop. To the extent that the Court finds that some other cumulative application is technically warranted, those provisions of the Guidelines should be considered and promptly disregarded as draconian and not useful under the particular facts of this case.

### 3. Criminal History Computation

The parties agree that Mr. Knox has no prior criminal history whatsoever, so he is of course in Criminal History Category I. See, U.S.S.G. § 4A.

### 4. Departures

Mr. Knox asks the Court to reject the Guidelines and depart therefrom as set forth below and in his supplemental filing.

## III. VARIANCES – 18 U.S.C. § 3553(a)

Section 3553(a) requires a district court to impose a sentence that is "sufficient, but not greater than necessary," to achieve the goals of sentencing. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). "The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (emphasis in original). See also, *Gall*, 552 U.S. at 48-50; *Rita v. United States*, 551 U.S. 338, 350-51 (2007). "[T]he sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson*, 555 U.S. at 351. Mr. Knox is requesting a downward variance based upon the effects of the COVID-19 pandemic on his case and his time in custody during the pendency of this matter as discussed below.

1. **COVID-19 Variance**

The Court is well aware of the extremely prejudicial effects the COVID-19 pandemic had on criminal cases and criminal defendants whose matters were pending during the last 18 months. Mr. Knox's case has been pending throughout the entirety of the pandemic. COVID has affected the defense of this matter, the court process, Mr. Knox's custody status, his physical and mental health, his family contact and connections, and essentially every other aspect of his case. He has done everything within his power to endure, remain somewhat healthy, and accept responsibility by resolving his case by a plea despite these circumstances. The time has been extremely difficult.

Despite these conditions, Mr. Knox has been a model inmate while in custody. He has received no behavioral write-ups nor sanctions. The Court should acknowledge these unique circumstances and their effect on Mr. Knox, his rights, and this matter and provide some form of a downward variance based on this consideration coupled with those discussed below.

Next, the Court should provide a variance under U.S.S.G. §5H1.1 – Age. Both the Probation Officer and the Government recognize that Defendant's young age counsels strongly in favor of a variant sentence focused more on rehabilitation and deterrence than punishment. Indeed, even with a sentence of ten years, the mandatory minimum required of the Court, Mr. Knox will spend the next decade in prison which amounts to a period half as long as he has been alive. The government request would have him in jail much closer to a period of how long he has been alive.

Biological age aside, the Court should also consider Mr. Knox substance abuse and mental health situation when considering his youth. First off, medical science has firmly established that the human brain does not even fully develop until approximately age 25. Mr. Knox is still years away from even that. Next, the record here is undisputed that Mr. Knox began using marijuana at age 12. He was exposed to his parent's drug use including marijuana, cocaine, and alcohol use throughout his childhood. By just age 14 he began using marijuana daily and was addicted to this substance before age 15. At age 16, following the unexpected and untimely death of his father, he began regularly using "dabs" (concentrated marijuana).

Mr. Knox's father's death was very hard on him. His Dad was the primary support for his family and a cultural role model and strong paternal presence for Mr. Knox. His Dad's death caused increased anxiety and depression for him. His substance use increased in volume and his behavior became increasingly irresponsible and impulsive. Indeed, this combination of his substance abuse, fueled by grief, and his desire to regain some stability in his life contributed to his offense conduct here.

> The term "impulsivity" is often used to describe behavior characterized by excessive approach with an additional failure of effective inhibition and has consistently been found to be associated with substance dependence. Impulsivity is a complex multifaceted construct which has resulted in numerous additional definitions such as, "the tendency to react rapidly or in unplanned ways to internal or external stimuli without proper regard for negative consequences or inherent risks," or "the tendency to engage in inappropriate or maladaptive behaviors."
>
> These definitions reflect different types of impulsivity. Examples include reflection impulsivity (action without adequate evaluation of the situation), impulsive action (inadequate motor inhibition), risky decision-making (impulsive choices of immediate rewards over larger delayed ones), and attentional impulsivity, or lack of perseverance (inability to focus on a

task or goal). In addition, the recently defined constructs of positive and negative urgency reflect the tendency to act rashly in response to extreme negative or positive affect. Whilst the sevarieties of impulsivity involve different psychological processes, it is likely that the interact to modulate behavior. (Internal citations omitted.)

"The Detrimental Effects of Emotional Process Dysregulation on Decision-Making in Substance Dependence", Frontiers in Integrative Neuroscience, Murphy, Taylor & Elliott, Nov. 7, 2012.

Researchers and clinicians have often noted that emotional maturity often stops where substance abuse begins. This phenomenon is only exacerbated in an adolescent who is nowhere near reaching emotional maturity like Mr. Knox was when he became addicted to drugs. It is clear that his immature, impulsive actions were those more in line with a young teenaged boy, seeking female peer interaction, than those of a rational thinking adult man preying upon children. His age, immaturity, and drug abuse all must play into the Court's consideration to mitigate the sentence here.

That this type of dynamic was what was actually happening in this case is apparent. Because even though Mr. Knox overtly sought to entice numerous young victims into engaging in sexual conduct with him, no such conduct happened. This remained true even though numerous situations occurred where he actually met up with one or more of the victims or was with them is situations that potentially allowed some type of conduct to occur, yet nothing ever happen. When victims told him no to his face or told him in person to leave them alone, he did. In fact, on many occasions Mr. Knox avoided contact with the victims or simply walked away after meeting with they as he was afraid to engage with them, much like a youthful, inexperienced teenager would be

expected to do. The Court must take the reality of the dynamics at play here into account and vary from the guidelines substantially.

Finally, and more generally, the Court should conclude, that based on the Section 3553(a) factors, a sentence well below the Guidelines range is sufficient and not greater than necessary to meet the statutory objectives of sentencing here.

## IV.     18 U.S.C. 3553(a) FACTORS

### 1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Mr. Knox offense conduct is described in the PSR, by the government in its filing and within the many materials filed by the defense with the Court for sentencing. He attempted to engage a number of minor-aged females in sexual relationships using cellular technology and the internet to text and message them, even though they all lived with a small, geographically enclosed area. To understand the unique circumstances of Jayson Knox's conduct, one must understand his culture, his up-bringing and his community. Exhibit D-2, filed herewith, is intended to present the Court with a snap-shot of the history, cultural circumstances, and struggles of everyday life in the Village of Kivalina at the time of Mr. Knox's offense, and even existing today. Those facts are relevant to evaluating both the nature of his offense and his personal history and characteristics, they are incorporated here by this reference.

Mr. Knox was raised in Kivalina and has a long family history there. The village has just 400 residents, nearly all of whom are Native Alaskans. His parents began to teach him cultural values, subsistence lifestyle, and generational Native practices before

he even became school-aged. Prior to being arrested on these charges, Mr. Knox's intention was to find a life mate, begin a family, and raise his family in his village, as his ancestors had done, living a traditional Native life. Because of circumstances described in Exhibit D-2, the village has been discouraging new individuals from moving into the village for many years. Moreover, once individuals leave, or even leave their own household due to age and development, establishment of a new household within the community is problematic and discouraged. Given Mr. Knox's family history in the village (many residents are directly related to him), coupled with his age and the relatively small number of individuals within his "peer" group, Mr. Knox's ability to find a mate or develop a relationship with a prospective spouse was limited at best.

Given the geography and isolation of the village, Mr. Knox certainly could have attempted physical contact with any of the victims, but he did not. He knew where every single one lived, went to school, recreated, etc. He could access any of those locations on foot within minutes. Again, he did not do that. Instead, his actions are better described as largely related inappropriate (and of course illegal) attempts at "consensual" hook-ups with females with whom he hoped to establish a relationship. Notably, he did not pursue these attempts once rejected.

Mr. Knox is smart, with a high school diploma, but suffers from a drug addiction, anxiety, and depression. He wants treatment, and to succeed, and to live a normal, healthy life. He is remorseful for his actions and at this point has no intention to return to Kivalina following his release. He is resigned to giving up cultural life in his village, due to his own behavior, but nevertheless wants to maintain the hopes and dreams of raising

a healthy, happy Native family at some point in the future. Wherever he ends up, he will have completely different options and chances to develop appropriate and "normal" intimate adult relationships which his testing and psychological history tend to show he will do.

**2. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; to Afford Adequate Deterrence to Criminal Conduct; to Protect the Public From Further Crimes of the Defendant; and to Provide the Defendant with Needed Education or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

As a result of his conviction, Mr. Knox will spend at least ten years in federal prison and several more years on supervised release. As the Probation Officer notes, Mr. Knox was completely cooperative with law enforcement since initially be confronted with his conduct and has NO prior contacts with the criminal justice system. He is amenable to and desires to enroll in sex offender treatment while in BOP. He has no prior terms of imprisonment or periods of supervision and participation in sex offender treatment appears to be the most necessary factor to keep the defendant from reoffending. He further wants and needs substance abuse treatment which he also hopes to complete while in custody. The community can be protected by a ten-year custody sentence, after which prohibiting Mr. Knox from having contact with minors and monitoring his computer usage through adequate supervision appear to be the most significant factors in protecting the public from further crimes by him. Given these considerations, a sentence of ten years in prison with another five years of supervised release is entirely sufficient to meet the goals of section 3553(a)(2).

A ten-year prison is severe punishment for anyone, much less a 23-year-old first-time offender. This sentence will unquestionably promote respect for the law. If Mr. Knox completes treatment while in custody and the prison term is followed by the structure and restrictions that will come with supervised release for another period of several years, the combined sentence terms are powerful deterrent inhibitors to future offenses and should drive home the importance of maintaining sobriety and a law-abiding lifestyle.

Rehabilitation is a factor for the Court to consider at sentencing. *United States v. Grant*, 664 F.3d 276, 279-280 (9th Cir. 2011). As noted, Mr. Knox hopes to use his custody time to voluntarily complete the Sex Offender Management Program and RDAP if permitted by the BOP. A sentence of 120 months provides sufficient time for Mr. Knox to take advantage of SOMP, RDAP and other BOP programming to assist with these needs. Probation recognizes these needs for treatment, as described in the PSR and the Probation Officer's recommendations to the Court.

**3. The Kinds of Sentences Available; and**
**4. The Kinds of Sentence and the Sentencing Range Established for the Offense**

This case involves a single count where the Court is required to impose at least a ten-year sentence. Although the statute and Guidelines allow up to a maximum or high-end sentence of life, both Probation and the Government recognize this case deserves a sentence at or near the mandatory minimum. The Guidelines are advisory in nature. The Court has complete sentencing authority to fashion a sentence at the mandatory minimum if the Court determines that such a sentence provides punishment that is sufficient but

not greater than necessary to accomplish the goals of sentencing. Here, the mandatory minimum sentence does that.

### 5. Any Pertinent Policy Statement

The Guidelines with respect to the offense here are advisory only. *United States v. Booker*, 543 U.S. 220, 245 (2005). Moreover, "[t]he Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009). The sentence should be sufficient, but no greater than necessary to accomplish the goals of sentencing.

### 6. Unwarranted Sentencing Disparities

Neither Probation nor the defense could find cases unique similar to Mr. Knox's conduct or circumstances that meaningful comparison was appropriate. Nevertheless, given Mr. Knox's age, his lack of prior history, his remorsefulness and acceptance of responsibility, the substantial mandatory minimum sentence alone should not create disparity from what other similarly situated defendants might expect for a sentence.

### 7. The Need to Provide Restitution to any Victims of the Offense

Restitution does not appear to be an issue in this case and restitution has not been recommended in the PSR.

In addition to his sentence request above, Mr. Knox would ask that the Court make the following specific recommendations to the Bureau of Prisons:

A) That he be allowed to participate fully in the Residential Drug & Alcohol Program (RDAP) and the Sex Offender Management Program (SOMP).

B) That he be placed at a facility primarily intended for the housing of sex offenders at FCI Englewood, Colorado or FCI Sheridan, Oregon.

## CONCLUSION

Based on all the information before the Court relative to this matter, in combination with the § 3553(a) factors and Probation recommendation discussed in the PSR, Mr. Knox's recommended sentence of ten years custody, the statutory mandatory minimum sentence, is "sufficient, but not greater than necessary," in this case.

DATED this 7th day of January, 2022.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

*/s/ Gary G. Colbath*
Gary G. Colbath
Assistant Federal Defender
(907) 646-3414
gary_colbath@fd.org

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on January 7, 2022. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system. */s/ Gary G. Colbath*

United States v. Jayson Knox
Case No. 4:20-cr-00005-RRB-SAO                                                                 Page 12 of 12

Case 4:20-cr-00005-RRB   Document 75   Filed 01/07/22   Page 12 of 12